UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | | |
|---|---|---|
| BRIAN CARR, | | |
| | Plaintiff | DECISION AND ORDER |
| -vs- | | |
| | | 10-CV-6176 CJS |
| WAL-MART STORES, INC. and BIMBO BAKERIES USA, INC., | | |
| | Defendants | |

_____

APPEARANCES

| | |
|---|---|
| For Plaintiff: | Luciano L. Lama, Esq.<br>2343 N. Triphammer Road<br>Ithaca, New York 14850 |
| For Defendant Wal-Mart: | Nathaniel Ari Weisbrot, Esq.<br>Phillips Nizer LLP<br>666 Fifth Avenue<br>New York, New York 10103-0084 |
| For Defendant Bimbo Foods Bakeries Distribution, Inc.: | John C. Nutter, Esq.<br>Paul L. Leclair, Esq.<br>Leclair Korona Giordano Cole LLP<br>150 State Street, Suite 300<br>Rochester, New York 14614 |

INTRODUCTION

Plaintiff asserts two causes of action in this case: 1) a claim for tortious interference with contract against Wal-Mart Stores, Inc. ("Wal-Mart"); and 2) a claim for breach of contract against Bimbo Foods Bakeries Distribution, Inc. ("BFBD"), sued here as Bimbo Bakeries USA, Inc. ("Bimbo"). Now before the Court are four motions: 1) a motion [#5] by Wal-Mart to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6); 2) a

motion [#7] by Bimbo for judgment on the pleadings pursuant to FRCP 12(c); and 3) two identical cross-motions [#8][#9] by Plaintiff to amend the Complaint. For the reasons that follow, Defendants' motions are granted, Plaintiff's cross-motions are denied, and this action is dismissed.

## BACKGROUND

Unless otherwise noted, the following facts are taken from Plaintiff's Complaint [#1] and the Proposed Amended Complaint. In or about 1998 Plaintiff formed a contract with Bestfoods Baking Distribution Company ("Bestfoods"). The contract grants Plaintiff the right to distribute Bestfoods' baked goods to retail outlets in a certain geographic area. The contract contains a provision limiting damages in the event of a breach, which states: "Notwithstanding anything to the contrary contained in this Agreement, in no event shall either party be liable to the other for any consequential, incidental, indirect or special damages, including lost profits and punitive damages." Agreement § 11.12.

On January 5, 2010, Plaintiff commenced this action in New York State Supreme Court, Chemung County, against Wal-Mart and Bimbo. According to the Complaint, Bimbo Bakeries USA, Inc. is the successor to Bestfoods. The Complaint purports to state two causes of action: 1) a claim against Wal-Mart for "tortious interference with a contractual relationship;" and 2) a claim against Bimbo for breach of contract. The first claim alleges that Wal-Mart made unspecified "false, negligent, defamatory accusations against Plaintiff and published said false, negligent and defamatory accusations to Bimbo," with the intention of impairing or destroying "Plaintiff's business relationship with Bimbo." Complaint ¶¶ 6-7. The Complaint contends that Wal-Mart acted with "malice" and a "desire to injure Plaintiff economically." *Id*. at ¶ 8. The second claim alleges that Bimbo "breached [the parties']

contract without justification by forbidding Plaintiff to deliver goods pursuant to said contract to Wal-Mart, or otherwise terminating Plaintiff's ability to do business with Wal-Mart." *Id*. at ¶ 16. For this alleged breach, Plaintiff demands five hundred thousand dollars ($500,000.00.). *Id*. at ¶ 17.

Wal-Mart subsequently filed the subject motion [#5] to dismiss pursuant to FRCP 12(b)(6), alleging that the Complaint "does not allege, or even imply, any of the necessary elements or key facts" of a claim for tortious interference. Wal-Mart Memo of Law [#5-6] at 1. Bimbo answered the Complaint and then filed the subject motion [#7] for judgment on the pleadings, seeking judgment for essentially three reasons: First, the Complaint incorrectly names Bimbo, instead of the correct party, which is BFBD, a separate corporation; second, the Complaint fails to allege sufficient facts to state a plausible claim for breach of contract; and third, the Complaint seeks lost profits, which cannot be recovered, pursuant to § 11.12 of the agreement set forth above.

In response to these motions, Plaintiff filed motions [#8][#9] to amend the complaint. The Proposed Amended Complaint [#9-4] names BFBD as a defendant instead of Bimbo, and adds a number of factual allegations to support the two causes of action asserted in the original complaint. The Proposed Amended Complaint maintains that the claims in this action essentially arise from an incident which occurred on June 6, 2009, at the Wal-Mart store in Big Flats, New York. Plaintiff contends that on that day, a Wal-Mart employee, Stacey Nuss ("Nuss"), scanned certain baked goods that Plaintiff was removing from the store, because they were stale, and gave Plaintiff a credit for the fifty-eight items that Plaintiff was removing. Plaintiff states that subsequently, a Wal-Mart Manager, Matt Huych ("Huych"), re-checked the items that Plaintiff was removing, using a scanner, and incorrectly concluded that Plaintiff was

attempting to cheat Wal-Mart. Proposed Amended Complaint at ¶ ¶ 40-50. Specifically, Plaintiff alleges that Huych first miscounted the items, and then, when attempting to re-count the items a second time, he "failed to zero out the first scan, and void the ticket." *Id*. at ¶ 49. The following day, Huych and Eddy Dewitt, who was Wal-Mart's District Manager, told Plaintiff that "there was a problem with [the previous day's] credits." *Id*. at ¶ 56. Plaintiff contends that Wal-Mart also made "another error" concerning his bread products, and blamed that on him as well. *Id*. at ¶ 58 ("This was another error made by Matt Huych, for which plaintiff was negligently and maliciously blamed."). Subsequently, Wal-Mart "banned" Plaintiff from selling products to its stores. *Id*. at ¶ 62. Plaintiff maintains that he did nothing wrong, and that a review of the documentary evidence and videotape evidence would prove his innocence. He contends that he asked representatives of BFBD to "speak to Matt Huych and review the videotapes," but they "refused, or neglected to do so." *Id*. at ¶ 60. Additionally, Plaintiff maintains that as a result of the foregoing incidents, BFBD sent him a "Notice of Breach of Distribution Agreement," which is attached to the proposed Amended Complaint. *Id*. at ¶ 65.[1] However, the notice upon which Plaintiff is relying does not pertain to Wal-Mart. Instead, the "Notice of Breach of Distribution Agreement" refers to an incident which occurred on May 16, 2009, in which Plaintiff allegedly failed to provide proper service to the Wegmans store located in Elmira, New York. In any event, the Proposed Amended Complaint further alleges that Wal-Mart intentionally and maliciously interfered with his contractual relationship with BFBD, and that as a result, he has lost "expectancy of economic gain," consisting of "a minimum of $6,000.00 weekly sales, and $1,200.00 per week net income." Proposed

---

[1] Proposed Amended Complaint states that the "Notice of Breach of Distribution Agreement" is attached as Exhibit 5, however, there is no such exhibit 5. Instead, the notice is submitted as Exhibit 1 to Plaintiff's Motion to Amend the Complaint.

Amended Complaint ¶ 129.  As for BFBD's alleged breach of contract, Plaintiff alleges that, "[d]espite receiving documentary evidence that the allegations made by Wal-Mart were indeed false, [BFBD] maintained their position that the contract that is the subject of this action was breached by Plaintiff." *Id*. at ¶¶ 125-127.  Again, however, in alleging that BFBD notified him that he had breached the contract, Plaintiff appears to be relying on the "Notice of Breach of Distribution Agreement" that pertains to a separate and unrelated incident at a Wegmans store in Elmira. *Id*. at ¶¶ 65,128.  Plaintiff demands $500,000.00 in damages against BFBD, consisting of  a loss of $1,200.00 per week net income." *Id*. at ¶ 129.

Plaintiff contends that the Court should permit him to file the Proposed Amended Complaint, which will correct the deficiencies alleged by Defendants in their respective motions.  Plaintiff further states that § 11.12 of the agreement does not bar his claim for damages against BFBD, since he is not seeking consequential or incidental damages.  In reply, however, Wal-Mart maintains that the Motion to Amend should be denied as futile, since the Proposed Amended Complaint still fails to state a claim against Wal-Mart.  For example, Wal-Mart states that the Proposed Amended Complaint makes clear that Wal-Mart had a "good faith and justifiable reason" for its decision to ban Plaintiff from its stores. Wal-Mart Reply Memo [#12] at 2 ("Plaintiff's Proposed Amended Complaint says nothing more [than] that Wal-Mart made a business decision to terminate its relationship with Plaintiff and advised the vendor [BFBD] of its decision."); *id*. at 3 ("Wal-Mart believed that the discrepancy in numbers was due to Plaintiff's removal of products  from Wal-Mart and his re-sale of those same products to other stores.").

On March 10, 2011, counsel for the parties appeared before the undersigned for oral argument of the motions.

DISCUSSION

Courts must freely give leave to amend pleadings "when justice so requires." FRCP 15(a)(2). Nevertheless, a "district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir.2009) (internal quotation marks omitted). "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Martin v. Dickson,* No. 03-7917, 100 Fed.Appx. 14, 16, 2004 WL 1205185 at *2 (2d Cir. Jun. 2, 2004) (unpublished).

In ruling upon a motion to dismiss made pursuant to FRCP 12(b)(6), the Court must construe

> the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. Although the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice. To survive dismissal, the plaintiff must provide the grounds upon which her claim rests through factual allegations sufficient to raise a right to relief above the speculative level.

*Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 131 (2d Cir. 2007) (citations and internal quotation marks omitted). "An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) (citations omitted). When "deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6)." *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000).

The Court is limited as to what evidence it can consider in ruling upon a 12(b)(6) motion:

> In considering a motion under Fed.R.Civ.P. 12(b)(6) to dismiss a complaint for failure to state a claim on which relief can be granted, the district court is normally required to look only to the allegations on the face of the complaint. If, on such a motion, matters outside the pleading are presented to and not excluded by the court, the court should normally treat the motion as one for summary judgment pursuant to Fed.R.Civ.P. 56.  In any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact.
>
> In certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6). Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered.  In addition, even if not attached or incorporated by reference, a document upon which the complaint solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion.

*Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citations and internal quotation marks omitted).

"The elements of a cause of action alleging tortious interference with contract are: (1) the existence of a valid contract between the plaintiff and a third party, (2) the defendant's knowledge of that contract, (3) the defendant's intentional procurement of the third party's breach of that contract, and (4) damages." *Chung v. Wang*, 79 A.D.3d 693, 694, 912 N.Y.S.2d 647, 648 (2d Dept. 2010) (citations omitted).  Such tort "is not satisfied by conduct that is merely negligent or incidental to some other, lawful, purpose." *Harris v. Town of Fort Ann*, 35 A.D.3d 928, 929, 825 N.Y.S.2d 804, 805 - 806 (3d Dept. 2006) (citation and internal quotation marks omitted); *see also, Alvord and Swift v. Stewart M. Muller Const. Co., Inc.*, 46 N.Y.2d 276, 281, 413 N.Y.S.2d 309, 312 (1978) ("[T]he interference must be intentional, not merely negligent or incidental to some other, lawful, purpose.") (citation omitted).  Moreover, "[u]nder New York law, actions taken to protect an economic interest are justified and cannot give rise to a tortious interference with a contract claim." *In re Bernard L. Madoff Inv. Securities LLC*,

440 B.R. 282, 294 (Bkrtcy. S.D.N.Y. 2010) (citations omitted). However, a plaintiff can overcome the "economic justification" affirmative defense by establishing that the defendant was "motivated by malice or employed illegal means to safeguard its interest." *Foster v. Churchill*, 87 N.Y.2d 744, 750, 665 N.E.2d 153, 156 (1996).

Applying the foregoing applicable legal principles to the facts of this case, the Court finds that Wal-Mart is entitled to summary judgment, since the Proposed Amended Complaint does not plausibly plead a claim for tortious interference with contract. At the outset, it does not appear that Plaintiff has even pleaded that a breach occurred, or if it did, that it was in any way connected to Wal-Mart. In that regard, he alleges in his Proposed Amended Complaint only that BFBD breached the agreement by sending him, and then failing to retract, the "Notice of Breach of Distribution Agreement" pertaining to a separate and unrelated incident at a Wegmans store in Elmira. Even assuming *arguendo*, though, that BFBD breached the agreement, Plaintiff has not plausibly alleged that Wal-Mart tortiously caused the breach. Instead, the Proposed Amended Complaint indicates that Wal-Mart banned Plaintiff from its stores because it believed, albeit mistakenly, that Plaintiff was acting dishonestly. Moreover, although the Proposed Amended Complaint alleges in conclusory fashion that Wal-Mart acted maliciously, it contains no facts which would make such an assertion plausible. That is, there is no indication or explanation as to why Huych, or anyone else at Wal-Mart, would maliciously and falsely accuse Plaintiff of dishonesty. Consequently, Plaintiff's claim against Wal-Mart is dismissed for failure to state a claim for tortious interference with contract under New York State law.

Turning to BFBD's motion, the Court finds that the Proposed Amended Complaint fails to state a claim for breach of contract since, as discussed above, the "Notice of Breach of

Distribution Agreement" by which BFBD allegedly breached the agreement does not pertain to the subject matter of this action. Alternatively, even assuming *arguendo* that Plaintiff pleaded a breach, the Court agrees with BFBD that Plaintiff cannot recover the damages that he is seeking. General or expectation damages for breach of contract may often include lost profits. See, 24 WILLISTON ON CONTRACTS § 64:2 (4th ed. 2010) ("Because the goal of protecting the plaintiff's expectation interest is to place the promisee in the same position as performance would have done, it follows that an award of damages will often include an amount representing the profits that were lost as a result of the defendant's breach of contract, because only by awarding lost profits will the plaintiff be made fully whole."). Moreover,

> [u]nder New York law, consequential damages for lost profits are recoverable if a plaintiff can demonstrate with reasonable certainty that: (1) the lost profits were caused by the breach; (2) what the amount of the lost profits were; (3) the liability for the lost profits were "fairly within the contemplation of the parties" at the time the agreement was formed.

*Saenger v. Presbyterian Church of Mount Kisco*, No. 96 CIV. 7684 (JFK), 1997 WL 742531 at *2 (S.D.N.Y. Dec. 1, 1997) (*citing Kenford Co., Inc. v. County of Erie*, 67 N.Y.2d 257, 261, 502 N.Y.S.2d 131, 132 (1986). However, it is also clear under New York law that an agreement to forego the ability to sue for lost profits is enforceable. *See, Smith-Hoy v. AMC Property Evaluations, Inc.*, 52 A.D.3d 809, 810, 862 N.Y.S.2d 513, 515 - 516 (2d Dept. 2008) ("A clear contractual provision limiting damages is enforceable absent a special relationship between the parties, a statutory prohibition, or an overriding public policy.") (citations omitted).

Here, the agreement between Plaintiff and BFBD clearly states that "lost profits" cannot be recovered. Plaintiff opposes Bimbo's motion, but significantly, does not address or explain the Agreement's specific reference to "lost profits." *See*, Pl. Memo of Law [#11-3]. Instead,

Plaintiff focuses on the clause's reference to "consequential, incidental, indirect" damages, and maintains that he is not seeking such damages. However, while Plaintiff characterizes the damages he is seeking as "loss of economic expectancy," it is clear that he is seeking lost profits. In that regard, Plaintiff alleges that, "[a]s a result of [BFBD's] unilateral breach, [he] has lost a minimum of $6,000.00 weekly sales, and $1,200.00 per week net income." Proposed Amended Complaint ¶ ¶ 64,129.

Alternatively, Plaintiff contends that § 11.12 of the Agreement may be unenforceable, if it would prevent him from recovering the damages he seeks:

> If it was the intent of the defendant to eliminate all liability arising out of the contract for damages, this clause would cause the agreement to be illusory. In other words, if neither party could seek redress for any damages for breach of the agreement, then there is no agreement, as the entire document becomes unenforceable, and useless. Accordingly, the clause relied upon by [BFBD] in an effort to escape liability must either be considered void, or voidable, or at least, narrowly construed.

Pl. Memo of Law [#11-3] at 7-8. On this point, Plaintiff suggests that lost profits or consequential damages are the only types of damages that could be sought in the event of a breach. The Court disagrees. Plaintiff, for example, possibly could have sought reliance damages. Additionally, an agreement barring the recovery of lost profits is enforceable even where the obvious purpose of the contractual relationship was the creation of such profits:

> At oral argument, defendants relied primarily on the assertion that because the parties entered into the contract with the anticipation of earning profits, they must have also anticipated that if the contract were breached, a claim for lost profits would be available. This argument goes too far. Every party entering into a commercial contract does so with the intention of earning profits, and if courts adopted defendants' logic, they would essentially nullify the limitation, imposed by the Court of Appeals, that the parties must have specifically contemplated a claim for lost profits when they entered into the contract. The critical distinction which defendants fail to make is that the parties must contemplate, not turning a profit, but the particular damages owing to lost profits should the deal turn sour. While the defendants may have had an expectation of profits, they have not shown that they and plaintiffs considered appropriate, at the time

they signed the contract, a suit for lost profits . . . should the contract be breached.

*Great Earth Intern. Franchising Corp. v. Milks Dev.*, 311 F.Supp.2d 419, 434 -435 (S.D.N.Y. 2004) (citations omitted).  Consequently, the Court finds that Plaintiff's breach of contract claim against Bimbo must be dismissed.

## CONCLUSION

Defendants' motions [#5][#7] are granted, Plaintiff's cross-motions to amend [#8][#9] are denied as futile, and this action is dismissed.  The Clerk of the Court is directed to terminate this action.

SO ORDERED.

Dated:      Rochester, New York
            March 15,  2011

ENTER:


 /s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge